IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CALVIN L. MERRITTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:16-cv-1020-NJR-DGW |
| | ) | |
| C/O BRAKE, C/O DEAN, LT. CHAD RAY, | ) | |
| C/O OCHS, C/O JOHNSON, C/O HUNDLEY, | ) | |
| and C/O SELBY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# REPORT AND RECOMMENDATION

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Nancy J. Rosenstengel pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a). For the reasons set forth below, it is **RECOMMENDED** that the Motion for Summary Judgment filed by Defendants (Doc. 66) be **DENIED** and that the Court adopt the following findings of fact and conclusions of law.

### FINDINGS OF FACT

Plaintiff, Calvin Merritte, an inmate formerly incarcerated at the Lawrence Correctional Center, alleges that Defendants retaliated against him and failed to protect him by placing him in a cell with a dangerous cellmate in September, 2014.

In a September 8, 2014 grievance, Plaintiff stated that he was placed in a cell, by

Correctional Officers Ochs and Johnson and Lieutenant Ray, with a person he had reported as an enemy (Doc. 67-1, pp. 1-2). In a letter attached to the grievance, Plaintiff explained that prison officials were trying to have him killed in retaliation for filing a habeas corpus action (Doc. 67-2, pp. 1-2). He stated that officials, such as Lt. Ray, Lt. McCarthy, C/O Ochs, C/O Brakes, and other officers, were hindering his ability to prosecute the habeas action, that C/O Ochs was angry about grievances he had submitted, and that C/O Johnson and Lt. Ray then placed him in the offending cell (*Id.*). Even when Plaintiff refused to go in the cell because he was afraid and requested a "crisis team member," he was compelled to enter the cell. In the letter and the grievance, Plaintiff requested protective custody. On the grievance itself, Plaintiff checked the box marking it an emergency and also circled "protective custody" in the section which instructs inmates to send grievances to the Administrative Review Board ("ARB") directly in certain circumstances. He sent the grievance directly to the ARB which received it on September 12, 2014.

In an October 14, 2014 response, the ARB informed Plaintiff that he had not followed procedure and that he should have received institutional responses prior to submitting the grievance to the ARB (Doc. 67-3).

In an affidavit attached to his response, Plaintiff states that he submitted an emergency grievance on September 8, 2014 to the Warden but that he received no response (Doc. 76, p. 15). Between the dates of August 17, 2014 and October 8, 2014, his counselor, Collin Ray (who is Lt. Ray's brother) failed to process various grievances (*Id.*). In an October 3, 2014 grievance, that Plaintiff sent directly to ARB which received it on October 8, 2014, Plaintiff complained that Counselor Ray was failing to process his grievances about the retaliatory conduct of Lt. Ray and C/O Johnson, his requests for medical care, and other grievances (*Id.* 21-22). In an October 10,

2014 grievance (filed after Plaintiff had been transferred to Pinckneyville CC), Plaintiff again raised the issue of being placed in a cell with a dangerous cellmate by Lt. Ray in retaliation (*Id*. 30-31). He noted that C/Os Hundley, Ochs, and other unknown correctional officers joked and laughed about him being in a dangerous situation for the 3 days that he was housed with the dangerous cellmate (*Id*.). Finally, he grieved a disciplinary ticket he received for fighting and disobeying orders because he was attempting to protect himself from the dangerous cellmate (*Id*.). This grievance also was sent directly to the ARB which received it on October 16, 2014. There is no evidence in the record that the ARB, even though it received both grievances, responded to either the October 3 or the October 10, 2014 grievances.

At a hearing held on November 14, 2014 pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), Plaintiff testified that each of Defendants were officers working in the segregation unit where he was housed during the relevant time period.

### CONCLUSIONS OF LAW

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FEDERAL RULE OF CIVIL PROCEDURE 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005).

> The Prison Litigation Reform Act provides:
>
> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit.

*Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*,182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies. 544 F.3d at 742. If a Plaintiff has exhausted his remedies, the case will proceed on the merits. If, however, a Plaintiff has not exhausted, the Court may either allow Plaintiff to exhaust or terminate the matter.

Under the procedures set forth in the Illinois Administrative Code,[1] an inmate must first attempt to resolve a complaint informally with his Counselor. ILL. ADMIN. CODE TIT. 20, § 504.810(a). If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. *Id*. §504.810(b). The grievance officer is required to advise the Chief Administrative Officer ("CAO" – usually the Warden) at the facility in writing of the findings on the grievance. *Id.*

---

[1] The Code was amended in April, 2017.

§504.830(d). The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. *Id.* § 504.830(d). An inmate may appeal the decision of the CAO in writing within 30 days to the Administrative Review Board for a final decision. *Id.*, § 504.850(a). *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken. *Id.* §504.840.

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

Defendants argue that the September 8, 2014 grievance, to which the ARB responded, was not properly submitted because it did not concern a matter that should have been grieved

directed to the ARB. The form that Plaintiff used states that grievances must be sent to the ARB that "involve[ ] . . . protective custody." The Code, however, specifies that only grievances concerning "[d]ecisions regarding protective custody placement, including continued placement in or release from protective custody" should be grieved directed to the ARB. Defendants argue that because Lawrence CC was a medium security prison and did not have a protective custody unit, Plaintiff could not grieve his placement in protective custody (Doc. 76-4, p. 3). Therefore, this grievance, even though it requested protective custody, should have gone to his counselor first.[2]

Defendants' construction of the both the Code and the grievance is too narrow. The letter attached to the grievance states that Plaintiff told officers that he feared for his life and that he requested a crisis team member. Lt. Ray, however, refused to provide such assistance and compelled him to enter his cell – even joking about Plaintiff and his cellmate fighting. Plaintiff also stated that he wrote letters to Internal Affairs but that he received no response. Certainly, one could infer that by refusing to enter a cell with a dangerous cellmate, requesting additional support, and seeking assistance from Internal Affairs was a request for protective custody. When that request was denied, a decision regarding protective custody was made and Plaintiff appropriately grieved that decision directly to the ARB. The fact that Lawrence may not have been able to accommodate a request for protective custody is irrelevant. This grievance, then, exhausted Plaintiff's claims against Lt. Ray, C/O Ochs, and C/O Johnson.

Even if Defendants' construction of the Code and the grievance is accepted, this Court still would find that Plaintiff exhausted his administrative remedies. Plaintiff submitted

---

[2] At the hearing, Defendants also argued that a grievance was not the proper manner in which to request protective custody. *See* ILL. ADMIN. CODE TIT. 20, § 501.320.

grievances regarding his placement in the offending cell, and the retaliatory reason for his placement, to his counselor but he received no response. He even submitted grievances outlining his previous grievances and complaining about the lack of responses. By failing to accept or respond to these grievances, the administrative remedies process was rendered unavailable and Plaintiff is deemed to have exhausted. The Court further finds that Plaintiff exhausted as to the claims against all Defendants. In his October 3 grievance, Plaintiff indicated that Lt. Ray and C/O Johnson put him in the offending cell in retaliation. In the October 10 grievance, which Plaintiff appropriately sent directly to the ARB,[3] he again indicated that Lt. Ray placed him in the cell with the dangerous cellmate, that he wrote the Warden about his safety fears, that he received a bogus disciplinary report (which is not a part of this case), and that C/Os Ochs, Hundley, Dean, and other correctional officers knew that he was in danger and laughed it off. At the time, Plaintiff did not know who these other officers were. However a reasonable inference from the grievance is that they worked in the segregation unit at the time that Plaintiff was complaining about his safety. At the hearing, Plaintiff testified that all the officers, including Brake and Selby were assigned to the segregation unit and, by inference, would have been aware of his vocal objections to being placed in a dangerous cell. If the prison had investigated Plaintiff's claims, it would not have been difficult to discern who the other officers were. The grievance, then, sufficiently identified the officers involved in the incident. This grievance was sufficient to fulfill the first purpose of a grievance which is to provide notice and an opportunity to correct problems highlighted by inmates. *Woodford*, 548 U.S. at 89.

---

[3] At the time, Plaintiff was housed at Pinckneyville CC and the events complained of occurred at Lawrence CC. "[I]ssues . . . that pertain to a facility other than the facility where the offender is currently assigned" should be sent directly to the ARB. *Id*. § 504.870(a)(4).

## RECOMMENDATIONS

For the foregoing reasons, it is **RECOMMENDED** that the Motion for Summary Judgment field by Defendants (Doc. 66) be **DENIED** and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: November 22, 2017**

**DONALD G. WILKERSON**
**United States Magistrate Judge**